

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALK
F. #2020V00599

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 22, 2024

By E-mail and ECF

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Norman Dupont
       Criminal Docket No. 95-091 (RPK)

Dear Judge Kovner:

The government respectfully submits this letter in response to the defendant Norman Dupont's January 5, 2024 motion for compassionate release. See ECF No. 128. As detailed below, the defendant was convicted at trial in 1995 of murder in-aid-of racketeering, among other violent crimes he committed as an associate of the Gambino Crime Family of La Cosa Nostra. From 2020 to 2022, the defendant moved for compassionate release three times, each time arguing that his age, health and rehabilitative efforts warranted relief. Each time, the Honorable Raymond J. Dearie, who presided over the defendant's trial and sentenced the defendant, denied the defendant's motion for release.[1] The defendant now moves a fourth time for compassionate release, relying primarily on the same arguments relating to his efforts at rehabilitation. This Court should again deny the motion because the defendant again fails to establish "extraordinary and compelling reasons" for relief and, in any event, the Section 3553(a) factors continue to weigh strongly against release.

I.      Background

As noted, the charges against the defendant arose from his participation in the affairs of the Gambino Family. As part of his association with the Gambino Family, Dupont conspired to kill, and killed, Harmon Fuchs, and conspired to extort and extorted Mark Friedman.

---

[1]     This case was reassigned to Your Honor on January 8, 2024.

A.       Superseding Indictment

On June 20, 1995, a grand jury in the Eastern District of New York returned a six count Superseding Indictment charging the defendant with conspiracy to murder and murder in aid of racketeering, in violation of 18 U.S.C. § 1959 (Counts One and Two), and Hobbs Act extortion conspiracy and Hobbs Act extortion, in violation of 18 U.S.C. § 1951 (Counts Three and Four). The Superseding Indictment also charged the defendant with one count of using and carrying a firearm in connection with the murder and conspiracy to murder, in violation of 18 U.S.C. § 924(c)(1) (Count Five), and one count of using and carrying a firearm in connection with the extortion and extortion conspiracy, in violation of 18 U.S.C. § 924(c)(1) (Count Six).

B.       Evidence Presented at Trial

The evidence at trial showed that the defendant was a close associate of the Gambino Organized Crime Family of La Cosa Nostra.  His convictions stemmed from two episodes relating to that association: (1) the murder of Harmon Fuchs, a car service dispatcher who worked for fellow Gambino Family associate Joseph Fabozzi; and (2) the extortion of Mark Friedman, the owner of another car service who had turned to the Gambino Family for help when he had been harassed by members of a Russian organized crime group.

With respect to the murder and conspiracy to murder convictions, the evidence showed that Dupont murdered Harmon Fuchs in order to send a message to Fabozzi.  Fabozzi owed and refused to pay a great deal of money to Dupont.  Fabozzi also frequently became embroiled in disputes with other members of organized crime families.  When that happened, Fabozzi would turn to Dupont for help and Dupont would have to resolve the disputes.  In response, Dupont decided to kill either Fabozzi or someone else whose death would send a message to Fabozzi.  To that end, on February 10, 1990, Dupont and two individuals who worked for him, Anthony Persichetti and Guy Zappulla, drove to a car service owned by Fabozzi.  When they arrived, Dupont, who was carrying a nine millimeter gun, got out of the car and entered the car service.  Zappulla and Persichetti heard several gunshots, and then saw Dupont emerge from the car service and get back into the car.  After realizing that shell casings may have been left behind, Dupont ordered Zappulla to go into the car service and retrieve any shells.  When Zappulla entered the car service, he saw a man he did not know (later determined to be Harmon Fuchs) lying wounded on the floor.

As to the extortion and extortion conspiracy convictions, the evidence at trial showed that Dupont had ordered Persichetti to assault Mark Friedman for failing to pay Dupont. As noted above, Friedman had turned to the Gambino Family for help after being harassed by members of a Russian organized crime group. The Gambino Family agreed to pay off Friedman's debt to the Russian organized crime group, and Friedman agreed to pay off the debt to Dupont.  In addition to his existing debt, Dupont forced Friedman to pay Dupont regular "protection payments" and made Friedman fear that if Friedman failed to pay he would be hurt.  When Friedman missed payments, Dupont contacted Persichetti and instructed Persichetti to give Friedman a beating.

C.      Conviction and Sentencing

On October 10, 1995, a jury found Dupont guilty of all six counts in the Superseding Indictment. On March 5, 1996, the Honorable Raymond J. Dearie sentenced Dupont to life in prison on Counts One through Four, plus twenty-five years on Counts Five and Six, and a five-year term of supervised release. See ECF No. 75.

D.      Appeal and Relevant Post-Conviction Proceedings

On March 15, 1996, the defendant appealed his conviction to the Second Circuit, arguing that the evidence at trial was legally insufficient to establish the Section 1959 jurisdictional predicate, and that the jury charge did not specify correctly the statutory motive requirement. The Second Circuit rejected both arguments and affirmed the defendant's convictions. See generally United States v. Dupont, 112 F.3d 506 (2d Cir. 1996).

On October 20, 1997, the defendant filed a petition to vacate his sentence under 28 U.S.C. § 2255. See Dupont v. United States, No. 97-CV-6035 (E.D.N.Y. Oct. 20, 1997), ECF No. 1. On December 29, 1999, the defendant filed an amended petition. Id. at ECF No. 12. After further correspondence with the Court and a telephonic conference, the Court held an evidentiary hearing on the defendant's claims, including his claim that he was denied effective assistance of counsel by his trial attorney's decision not to present an alibi defense. Id. at ECF No. 23. The Court denied the defendant's petition for a writ of habeas corpus. Id. at ECF No. 32. The Second Circuit affirmed the Court's denial of the petition. See generally Dupont v. United States, 224 F. App'x 80 (2d Cir. 2007).

On April 17 and 27, 2020, the defendant pro se requested transfer to home confinement due to the COVID pandemic. See ECF Nos. 96-97. The government construed the filings as a motion for compassionate release because the only way to fashion a legal sentence that would have granted the defendant's request for "home confinement," would have been to resentence him to time served, to be followed by a period of supervised release including a special condition of home confinement. See ECF No. 99 at 1 & n.1. In the filings, the defendant argued that his age and various health conditions put him at risk were he to contract COVID. He also asserted that he is in a program for "stable outpatients, with chronic illnesses requiring clinical contact every three months." Id. at 4. Finally, the defendant argued that he was a "model inmate," was in a "minimum risk category" for recidivism, planned to live with his wife if released, and was a "new man." Id. at 5-6.

On May 4, 2020, the Court denied the defendant's motion. See ECF No. 100. The Court concluded that, "aside from the defendant's failure to exhaust his administrative remedies," there were "no extraordinary and compelling reasons that would justify his release." Id. The Court further concluded that the defendant's "age, physical condition and the general challenges confronting penal institutions during the current health crisis do not suggest otherwise." Id. Finally, the Court concluded that the Section 3553 sentencing factors "certainly . . . compel[] the defendant's continued incarceration." Id.

On June 22, 2020, the defendant, now represented by counsel, moved for reconsideration of the Court's May 4, 2020 Order denying compassionate release. See ECF No. 106. In that motion, the defendant continued to argue that various medical conditions warranted his release and that he was a model inmate, is at low risk for recidivism, planned to live with his wife, and was a changed person. The Court again denied the motion. See ECF No. 110. In doing so, the Court explained "I did not initially regard [the defendant's] medical status as anything approaching the level of extraordinary and compelling, and I do not now after a thorough review of the submitted materials." Id. at 1. The Court also stated the following as to the Section 3553(a) factors:

> Upon consideration of the factors in 18 U.S.C. § 3553, I do not consider the matter a close question. The brutal and senseless killing in this case warrants the punishment imposed, and neither [the defendant's] medical situation nor his claims of rehabilitation begin to invite the Court's favorable consideration.

Id. at 2. Finally, the Court made clear that it "did not deny the pro se application on exhaustion grounds." Id.

About two years later, on July 15, 2022, the defendant again moved pro se for compassionate release. See ECF No. 122. The defendant's submission focused entirely on his post-conviction rehabilitation. For instance, he argued that he was a "model inmate," and that his "exceptional behavior and resourcefulness contributed to the efficient operation of [his prison]." Id. at 1. The Court again denied the defendant's motion. See ECF No. 124. The Court acknowledged the defendant's good behavior while in prison, but found that the motion was "procedurally and substantively deficient" because the defendant "failed to exhaust administrative remedies, adduce sufficient evidence of extraordinary and compelling reasons supporting a reduction in sentence, or address the 18 U.S.C. § 3553 sentencing factors." Id. at 1. The Court also noted that "rehabilitation alone is insufficient" to establish extraordinary and compelling reasons for release. Id. at 1 n.1.

II.    This Court Should Deny the Defendant's Motion for Compassionate Release

On January 5, 2024, the defendant, represented by counsel, again moved for compassionate release. This Court should again deny the motion because the defendant again fails to establish "extraordinary and compelling reasons" for relief and, in any event, the Section 3553(a) factors continue to weigh strongly against release.

A.    Relevant Law

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see Dillon v. United States, 560 U.S. 817, 824-25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1). With compassionate release, a court may modify an already-imposed

sentence upon a showing of "extraordinary and compelling reasons."   18 U.S.C. § 3582(c)(1)(A)(i).

Before the November 1, 2023 amendments to the United States Sentencing Guidelines, "when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could 'consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release.'" United States v. Corbett, No. 10 CR. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (quoting United States v. Brooker, 976 F.3d 228, 232 (2d Cir. 2020)).

As of November 1, 2023, the "amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition." Id. That guidance "instruct[s] courts to consider not only the defendant's medical circumstances, age, and family circumstances, but also whether the defendant is or has been a victim of abuse or received an unusually long sentence under certain circumstances with a change in the law." United States v. Raposo, No. 98 CR 185 (JPC), 2024 WL 165195, at *5 (S.D.N.Y. Jan. 16, 2024) (citing U.S.S.G. § 1B1.13(b)(1)-(4), (6)). The guidance also allows courts to consider any other circumstance or combination of circumstances that, either themselves or together with the reasons identified in subsection (b)(1) through (b)(4) (i.e., medical circumstances, age, family circumstances, and victim of abuse), rise to the level of gravity of those four reasons." Id. (citing U.S.S.G. § 1B1.13(b)(5)). As to rehabilitation, the amended guidance provides that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B.13(d); accord Raposo, 2024 WL 165195, at *8 ("A defendant, however, still cannot rely on rehabilitation alone as a basis to justify a sentence reduction.").

"It is a defendant's burden to show that he or she is entitled to a sentence reduction under the compassionate release statute." United States v. Reid, No. 05-CR-596 (ARR), 2021 WL 837321, at *3 (E.D.N.Y. Mar. 5, 2021) (alteration, quotation marks and citation omitted); United States v. Pellegrino, 492 F. Supp. 3d 65, 68 (E.D.N.Y. 2020) ("A defendant seeking relief under Section 3582(c)(1)(A) 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-80 (NRB), 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020))). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (citations omitted).

If a court finds "extraordinary and compelling reasons," to support compassionate release, it may reduce the sentence only after considering the factors set forth in section 3553(a) to the extent that they are applicable. See 18 U.S.C. § 3582(c)(2). Thus, the existence of extraordinary and compelling reasons per se does not compel compassionate release if the Court determines that the Section 3553(a) factors warrant continued imprisonment. See United States v. Horne, No. 10-CR-954 (JPO), 2023 WL 8433980, at *2 (S.D.N.Y. Dec. 5, 2023) ("Even if a court finds extraordinary and compelling reasons, before granting a sentence reduction, the court must also conclude that a sentence reduction is consistent with 'the factors set forth in section 3553(a) to the extent that they are applicable.'" (citing 18 U.S.C. § 3582(c)(1)(A))); United States v. Gotti,

No. 02-CR-743 (CM), 2020 WL 497987, at *2 (S.D.N.Y. Jan. 15, 2020) ("It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is not thereby automatically <u>entitled</u> to a sentence modification.  He is simply <u>eligible</u> for a sentence modification.  The court . . . is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." (emphasis added)).

B.  <u>Discussion</u>

This Court should reject the defendant's latest effort to avoid serving a life sentence for murdering Harmon Fuchs in-aid-of racketeering and for violently extorting Mark Friedman.  As noted, the defendant's most recent motion largely rehashes arguments that were considered and rejected—multiple times—by Judge Dearie.  The Court should deny the instant motion because the defendant has failed to establish "extraordinary and compelling reasons" justifying relief and, in any event, the Section 3553(a) factors weigh strongly against the relief he seeks.

The vast majority of the defendant's motion focuses on his rehabilitative efforts.  While the government does not dispute the defendant's positive record at FCI Fort Dix, that record alone cannot give rise to extraordinary and compelling reasons for compassionate release.  <u>See, e.g.</u>, U.S.S.G. § 1B.13(d); <u>Raposo</u>, 2024 WL 165195, at *8.  "Indeed, 'every inmate should strive for a productive institutional record while incarcerated because that is what is expected.'"  <u>United States v. Hertular</u>, No. 04 CR. 9 (NRB), 2024 WL 196015, at *2 (S.D.N.Y. Jan. 18, 2024) (quoting <u>United States v. Saleh</u>, No. 93 Crim. 181(WHP), 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020)).  Accordingly, while commendable, the defendant's positive rehabilitative efforts do not warrant his release.  <u>See, e.g.</u>, <u>Corbett</u>, 2023 WL 8073638, at *7 ("Corbett's participation in programming does not make out an extraordinary circumstance."); <u>United States v. Needham</u>, No. 06 Cr. 911 (AKH), 2022 WL 19769, at *4 (S.D.N.Y. Jan. 3, 2022) (finding rehabilitation through prison programming not to rise to the level of extraordinary and compelling reason for early release); <u>United States v. Torres</u>, No. 16 Cr. 500 (RMB), 2021 WL 1131478, at *3 (S.D.N.Y. Mar. 24, 2021) (finding enrollment in GED and other courses was not an extraordinary and compelling circumstance); <u>United States v. Bolden</u>, 15 Cr. 466 (VB), 2021 WL 242551, at *2 (S.D.N.Y. Jan. 25, 2021) ("But participation in or completion of [programming], while laudable, is not an extraordinary and compelling reason warranting a compassionate release."); <u>United States v. Reyes</u>, No. 91 Cr. 358 (KPF), 2020 WL 5518483, at *3 (S.D.N.Y. Sept. 14, 2020) (finding completion of "dozens" of prison-provided programs and attainment of GED, without more, did not support compassionate release); <u>United States v. Poncedeleon</u>, No. 18-CR-6094, 2020 WL 3316107, at *3 (W.D.N.Y. June 18, 2020) ("As for Defendant's rehabilitative and behavioral record, those efforts are certainly worth commending, but it does not weigh heavily in favor of release.  Indeed, by itself, rehabilitation of the defendant cannot constitute an 'extraordinary and compelling' reason justifying compassionate release.").

The defendant attempts to argue that other factors, in combination with his rehabilitative efforts, give rise to extraordinary and compelling reasons for release. None of these asserted factors, alone or in combination, warrant the relief he seeks.  First, the defendant points to the fact that he was incarcerated during the Covid-19 pandemic, which resulted in lock downs and a lack of family visits.  But courts, while acknowledging the "admittedly harsh conditions of

confinement created by the COVID-19 pandemic," have routinely rejected the argument that those conditions give rise to extraordinary and compelling reasons justifying compassionate release. E.g., United States v. Ramirez, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021). As those courts have explained, "If the challenging conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction." Id.; see also Hertular, 2024 WL 196015, at *3 (rejecting argument that "lockdowns and a lack of family visitation" constituted extraordinary and compelling reason for compassionate release); United States v. Lawrence, No. 19 CR. 437 (AKH), 2022 WL 4000904, at *3 (S.D.N.Y. Sept. 1, 2022) ("[C]onditions universally applicable to all inmates at a given facility, including conditions instituted during the pandemic, do not give rise to extraordinary and compelling circumstances.").

Next, the defendant argues that the mandatory nature of his life sentence constitutes an extraordinary and compelling reason for the relief he seeks.[2] More specifically, he argues without citation that "the courts" have found mandatory life sentences "sufficient – in combination with rehabilitation – to warrant a sentence reduction." As an initial matter, the fact that the defendant was sentenced when the Guidelines were mandatory is not an extraordinary or compelling reason for the relief he seeks. See, e.g., United States v. Tran, No. 90-CR-1019 (RPK), 2022 WL 7132195, at *4 (E.D.N.Y. Oct. 12, 2022) ("Booker, of course, was not retroactive, and so Mr. Tran is not entitled to be resentenced based on Booker itself. And I cannot conclude that the fact that a defendant was sentenced under the mandatory Guidelines is by itself an extraordinary and compelling reason to reduce his sentence now."). Moreover, while mandatory minimum sentences may, in some cases, give rise to circumstances justifying relief, this is not such a case. As Judge Dearie concluded in denying the defendant's motion for compassionate release in 2020, "[t]he brutal and senseless killing in this case warrants the punishment imposed." ECF No. 110 at 2. And, contrary to the defendant's assertions, courts routinely deny compassionate release relief to defendants serving mandatory life sentences for murder. See, e.g., Mem. & Order dated July 7, 2021 at 9, United States v. Hunter, No. 05 CR 188 (E.D.N.Y.) (AMD), ECF No. 366; United States v. Gomez, No. 99-CR-1048-2 (DC), 2023 WL 4562127, at *5 (S.D.N.Y. July 17, 2023) (rejecting argument in compassionate release context that life sentence was "disproportionately harsh" in murder for hire case and noting "courts in this District have routinely sentenced defendants to life in prison following conviction on murder charges").[3]

---

[2]    The defendant was sentenced pre-Booker, with a Guidelines range of life. He murdered Fuchs before 18 U.S.C. § 1959 was amended to mandate a life sentence or death, but was sentenced for the murder after that amendment went into effect. The defendant does not cite to anything in the record to support his assertion that the Court mistakenly believed that the life sentence was mandated under 18 U.S.C. § 1959. In any event, Judge Dearie's subsequent decisions make clear that he concluded a life sentence was warranted regardless.

[3]    For the same reasons, the defendant's assertion that extraordinary and compelling reasons exist based on the fact that the national average sentence for murder is 21.5 years (without citation) is meritless. ECF No. 128 at 13.

Even if the Court were to conclude that the defendant had demonstrated extraordinary and compelling reasons, the Section 3553(a) factors do not support the relief he seeks. The defendant's crimes—which included gunning Harmon Fuchs down in cold blood just to send a message to Joseph Fabozzi, and ordering Mark Friedman assaulted—are indisputably violent and serious. The reasons supporting the defendant's life sentence are no less true today than they were at the time of his sentencing. Courts in this Circuit have routinely denied compassionate release motions based on the Section 3553(a) factors in similar circumstances. See, e.g., United States v. Snype, No. 02-CR-939 (DC), 2021 WL 1178238, at *4 (S.D.N.Y. Mar. 29, 2021) (rejecting compassionate release for a defendant serving a life sentence for a violent robbery); United States . Jackson, No. 02 CR 756 (PGG), 2021 WL 4150962, at *5 (S.D.N.Y. Sept. 13, 2021) (considering the Section 3553(a) factors and denying release given the defendant's role in an intentional murder and the need for deterrence); United States v. Polanco, No. 07-CR-780 (FB), 2021 WL 1854739, at *1 (E.D.N.Y. May 10, 2021) (denying an application for compassionate release given the especially violent nature of the defendant's crimes); United States v. Myrick, No. 12-CR-385 (ARR), 2020 WL 6128943, at *4 (E.D.N.Y. Oct. 19, 2020) ("Given Myrick's prior involvement with multiple murders and violent acts, I cannot rest assured that he would not pose a danger to the community if released."); United States v. Cato, No. 16-CR-326 (ARR), 2020 WL 5709177, at *5 (E.D.N.Y. Sept. 24, 2020) (rejecting a request for compassionate release given the defendant's "history of crime and violence").

III.     Conclusion

For the foregoing reasons, the government respectfully submits that the Court should deny the defendant's motion for release.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ Anna Karamigios
        Anna L. Karamigios
        Assistant U.S. Attorney
        (718) 254-6225

cc:     James R. Froccaro, Esq. (By ECF)
        Clerk of Court (by ECF)